PEOPLE v WAGNER

Docket No. 47836. Submitted June 12, 1980, at Lansing.—Decided
March 3, 1981.

Charles D. Wagner was convicted of armed robbery and felony-
firearm in Jackson Circuit Court, James G. Fleming, J. The
robbery was allegedly committed by the defendant and another
man, Steve Hartranft, who pled guilty to armed robbery in a
separate proceeding before Judge Fleming. The defendant ap-

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judges § 179.
Disqualification of judge by state, in criminal case, for bias or
prejudice. 68 ALR3d 1416.

[2] 21 Am Jur 2d, Criminal Law §§ 185-187.

[3] 5 Am Jur 2d, Appeal and Error § 867.
21 Am Jur 2d, Criminal Law § 582.

[4] 68 Am Jur 2d, Searches and Seizures §§ 2, 4, 35 *et seq.*

[5] 68 Am Jur 2d, Searches and Seizures §§ 37-59.

[6-9] 68 Am Jur 2d, Searches and Seizures § 46 *et seq.*

[8] Admissibility of evidence discovered in search of defendant's
property or residence authorized by one, other than relative, who
is cotenant or common resident with defendant—state cases. 4
ALR4th 1050.
Admissibility of evidence discovered in search of defendant's prop-
erty or residence authorized by defendant's adult relative other
than spouse—state cases. 4 ALR4th 196.
Admissibility of evidence discovered in warrantless search of rental
property authorized by lessor of such property—state cases. 2
ALR4th 1173.
Admissibility of evidence discovered in search of defendant's prop-
erty or residence authorized by defendant's spouse (resident or
nonresident)—state cases. 1 ALR4th 673.
Admissibility of evidence discovered in search of defendant's prop-
erty or residence authorized by domestic employee or servant. 99
ALR3rd 1232.
Admissibility of evidence discovered in search of adult defendant's
property or residence authorized by defendant's minor child-state
cases. 99 ALR3rd 598.
Admissibility of evidence discovered in warrantless search of prop-
erty or premises authorized by one having ownership interest in
property or premises other than relative. 49 ALR Fed 511.

[10] 29 Am Jur 2d, Evidence §§ 298, 320 *et seq.*

peals, alleging that 1) the trial judge was biased because, prior to the start of the defendant's trial, he had accepted Hartranft's guilty plea in which Hartranft stated that the defendant had participated in the crime, 2) the trial judge had a duty to disqualify himself *sua sponte* and should not have accepted the defendant's waiver of jury trial, 3) his convictions for armed robbery and felony-firearm are in violation of the double jeopardy clause of the Federal and state constitutions, 4) the trial court erred by sentencing the defendant to a prison term twice as long as that given to his coparticipant, Hartranft, by the same judge, 5) two rifles, ammunition and clothing admitted as evidence at the trial should have been excluded as products of an illegal search and seizure without a warrant, and 6) the trial court erred by allowing testimony concerning a prior armed robbery of a party store committed by defendant as evidence of similar acts. *Held:*

1. The record does not show actual bias or prejudice on the part of the trial judge.

2. The defendant's convictions of both armed robbery and felony-firearm do not violate his right to be free from double jeopardy.

3. The sentence imposed on the defendant was proper since the trial judge indicated that the disparity in sentencing between the defendant and Hartranft was based on the facts that Hartranft had cooperated with the prosecuting authorities in solving the crime and that the defendant had carried the gun during the robbery and pointed it at the store clerk.

4. The trial judge erred in ruling that the defendant lacked standing to raise the search and seizure issue. The prosecution did not meet its burden of proving that the party who gave the consent had the authority to consent to entry of the townhouse by the police. The police entry of the townhouse, whether or not a technical "search" occurred, constituted an invasion of the defendant's Fourth Amendment rights of privacy and security in his home. The trial judge should have excluded the seized evidence. However, the trial court's failure to exclude the evidence seized from the townhouse coupled with any error which may have occurred regarding the admissibility of the defendant's confessions was harmless error.

5. No reversible error occurred because of the admission of evidence of a prior armed robbery committed by the defendant as evidence of similar acts.

Affirmed.

1. Appeal — Criminal Law — Disqualification of Judges.

   The record must show actual bias or prejudice before a defendant's conviction will be reversed because of a claim that the trial judge should have disqualified himself; a judge is not automatically disqualified because he has made prior rulings adverse to a defendant.

2. Criminal Law — Felony-Firearm — Double Jeopardy.

   Convicting a defendant of felony-firearm and of the underlying offense upon which the felony-firearm charge is based does not violate the prohibition against double jeopardy found in the United States or Michigan Constitutions.

3. Criminal Law — Sentencing — Appeal.

   A trial court is given wide discretion in sentencing and appellate courts do not possess supervisory control over the punishment imposed; therefore, where one of two codefendants, who were both convicted of the same offense, was given a minimum sentence twice as long as that of the other codefendant, there was no error because the sentence was within the maximum penalty provided by statute.

4. Searches and Seizures — Standing.

   The current requirement for standing to object to a search and seizure without a warrant is that the defendant have a legitimate expectation of privacy in the area searched.

5. Searches and Seizures — Searches Without Warrants — Constitutional Law.

   A search and seizure without a warrant is unreasonable per se and violates the United States and Michigan Constitutions unless the search and seizure falls under one of the exceptions to the warrant requirement (US Const, Am IV; Const 1963, art 1, § 11).

6. Searches and Seizures — Consent — Appeal.

   Consent is an exception to the requirement that search warrants be obtained before a search and seizure is conducted by police; in determining the validity of a consent search, a trial court should review the totality of the circumstances and its decision will not be reversed unless clearly erroneous.

7. Searches and Seizures — Consent — Burden of Proof.
   Proof.

   The prosecution has the burden of proving that the person who gave consent to a search by police was authorized to do so and

did so freely and voluntarily where the prosecution relies on consent to justify the search.

8. SEARCHES AND SEIZURES — CONSENT — POSSESSION OR CONTROL OF PREMISES.

A third party with a right of possession or control of the premises equal to that of a defendant can give valid consent to a police search of the premises for evidence to be used against the defendant.

9. SEARCHES AND SEIZURES — CONSENT — OVERNIGHT GUESTS. GUESTS.

An overnight guest does not have joint access to or control of the premises in which he is staying for purposes of providing valid consent to entry of the premises by the police.

10. EVIDENCE — SIMILAR ACTS EVIDENCE.

The evidential process by which evidence of similar acts of a defendant is properly introduced involves direct proof of three propositions from which a fourth is inferable and thus proved circumstantially; they are that 1) the manner in which the criminal act in question or some significant aspect of it was performed bore certain distinguishing, peculiar or special characteristics, 2) certain specific similar acts performed contemporaneously with or prior to or subsequently to the act in question bore the same distinguishing, peculiar or special characteristics, 3) the similar acts were performed by the defendant, and 4) accordingly, the crime in question was committed by the defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward J. Grant,* Prosecuting Attorney, and *John L. Wildeboer,* Chief Appellate Attorney, for the people.

*Myron E. Sanderson,* for defendant on appeal.

Before: DANHOF, C.J., and BRONSON and CYNAR, JJ.

DANHOF, C.J. Defendant, Charles David Wagner, was convicted of armed robbery, contrary to MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, contrary to

MCL 750.227(b); MSA 28.424(2), in a Jackson County Circuit Court bench trial. The convictions stemmed from a March 20, 1979, armed robbery of the "Party Pointe" store, allegedly committed by defendant and another man, Steve Hartranft. Hartranft pled guilty to armed robbery in a separate proceeding. Defendant was sentenced to consecutive prison terms of 2 years for the felony-firearm offense and 10 to 20 years for the armed robbery. He appeals as of right.

Defendant first argues that the trial judge was biased because, prior to the start of defendant's trial, he had accepted Hartranft's guilty plea and during that proceeding Hartranft stated that defendant had participated in the crime. There was no defense motion for disqualification; however, defendant now claims that the judge had a duty to disqualify himself *sua sponte* and should not have accepted defendant's waiver of the jury. The record in the present case does not show actual bias or prejudice on the part of the trial judge; therefore, we will not reverse defendant's conviction on this ground. *People v Elmore,* 92 Mich App 678; 285 NW2d 417 (1979).

Next, defendant contends that his convictions for armed robbery and the felony-firearm offense are in violation of the double jeopardy clause of the Federal and state constitutions. This issue was resolved against defendant in *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), and we are bound by that decision.

Defendant also seeks a remand for resentencing. He claims that the trial court erred by sentencing him to a prison term twice as long as that given to coparticipant Hartranft by the same judge. When defendant was sentenced, the judge indicated that

the disparity in sentencing was based on the facts that Hartranft had cooperated with the prosecuting authorities in solving the crime and that defendant had carried the gun during the robbery and pointed it at the store clerk. The sentence was within the statutory limits. We find that defendant's sentence was proper based on *People v Dupuie,* 52 Mich App 510; 217 NW2d 902 (1974), and *People v McLott,* 70 Mich App 524; 245 NW2d 814 (1976).

Defendant next argues that two rifles, ammunition and clothing admitted as evidence at the trial should have been excluded as products of an illegal warrantless search and seizure. Prior to the commencement of trial, counsel for both sides agreed that evidence relating to the search and seizure question would be taken during the course of the trial rather than in a separate suppression hearing. At the close of the prosecution's proofs, the court ruled that the disputed items were admissible for two reasons; first, because defendant lacked standing to contest the search and seizure and second, because Hartranft had consented to the police action.

The evidence in question was seized from the attic of a townhouse rented by defendant's girlfriend, Jacalyn Ann Whiting. The police, acting on an anonymous tip, arrived at the house on the morning of April 10, 1979. They were investigating the March 20 party store robbery and a similar robbery which had occurred on the night of April 9. Defendant and Hartranft responded to a knock on the door and agreed to talk to the officers outside. They were taken to separate police cars and interviewed. Hartranft informed the police that there were weapons hidden in the house and volunteered to go in and bring them out. Two

officers then accompanied Hartranft into the house. He led one of them upstairs to a bedroom closet which contained a trap door leading to the attic. He began to open the door, stating that the guns were just inside. At this point, the police officer reached into the attic and removed two rifles, ammunition and clothing. The parties then left the house with one of the officers carrying these items.

The police did not obtain a search warrant before entering the house. Hartranft had informed a police officer prior to the entry that he and his wife, who was inside at the time, had spent the night in the house. The police made no attempt to determine who actually lived there. At the trial, the tenant (Ms. Whiting) testified that she lived in the townhouse and that defendant had moved in with her and had been living there for an indefinite time. She stated that he kept his clothes there and spent his nights there. She also testified that Hartranft and his wife were overnight guests for one night and did not have permission to allow anyone else to enter the house without her knowledge.

We conclude that the trial judge clearly erred in ruling that defendant lacked standing to raise the search and seizure issue. The current requirement for standing in search and seizure cases is that the defendant have had a "legitimate expectation of privacy" in the area searched. *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978). The defendant had such an expectation of privacy with respect to the townhouse, which was his home. We do not find his lack of a property interest based on tenancy or ownership to be a significant factor under the circumstances of this case. See, *People v Mason,* 22 Mich App 595; 178 NW2d 181 (1970),

*People v Mack,* 100 Mich App 45; 298 NW2d 657 (1980).

The validity of Hartranft's consent to the police entry and seizure presents a more difficult question. Initially, we note that a warrantless search and seizure is unreasonable per se and violates the Fourth Amendment of the United States Constitution and art 1, § 11 of the Michigan Constitution unless shown to fall under one of the exceptions to the warrant requirement. *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975). One of these exceptions is consent, and in determining the validity of the consent search, the trial court must review the "totality of the circumstances". Its decision will not be reversed unless clearly erroneous. *People v Chism,* 390 Mich 104; 211 NW2d 193 (1973).

When the prosecution relies on consent to justify a search, it has the burden of proving that the person who gave the consent was authorized to do so and did so freely and voluntarily. *People v Taylor,* 67 Mich App 76; 240 NW2d 273 (1976). In *United States v Matlock,* 415 US 164; 94 S Ct 988; 39 L Ed 2d 242 (1974), the Supreme Court stated:

"[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." 415 US at 171; 94 S Ct at 993; 39 L Ed 2d at 249.

In a footnote, the Court added the following:

"Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-

party consent * * * rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own· right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.,* fn 7.

This Court similarly has held that a third party with a right of possession or control of the premises equal to that of defendant can give valid consent to a police search of the premises for evidence to be used against the defendant. *People v Barbat,* 49 Mich App 519; 212 NW2d 318 (1973), *lv den* 391 Mich 795 (1974).

The evidence indicates that Hartranft himself had access to the townhouse and the attic where the evidence was hidden. Had he gone inside alone, without police involvement, and brought the evidence out, the Fourth Amendment would not apply. *People v Harry James Smith,* 31 Mich App 366; 188 NW2d 16 (1971). We conclude, however, that the prosecution did not meet its burden of proving that Hartranft had the authority to consent to police entry of the townhouse. This was not a case where the consenting party had apparent authority to allow the entry, since Hartranft had informed the police that he had "spent the night" at the townhouse. This statement should have prompted further police questioning as to who lived in the townhouse. Obtaining a search warrant would not have unduly burdened the police because they had the suspects in custody and there were adequate forces on the scene. We cannot say that an overnight guest has "joint access or control for most purposes". Hartranft did not have the common authority over the premises required

by *Matlock* as a basis for valid consent to the police entry.

The prosecutor argued below that there was no search because the police were led directly to the evidence and, on appeal, the people focus on the seizure and Hartranft's right of access to the attic area. The police entry of the townhouse, whether or not a technical "search" occurred, constituted an invasion of defendant's Fourth Amendment right of privacy and security in his home. See, *People v Long,* 94 Mich App 338; 288 NW2d 629 (1979), *People v Harry James Smith, supra.* The trial judge should have excluded the seized evidence.

The final issue raised by defendant is whether the trial court erred by allowing testimony concerning the April 9 armed robbery of a party store as evidence of similar acts. Before similar acts evidence can be admitted, it must be probative of one of the purposes specified in MRE 404(b) and that purpose must be "in issue" in the case. *People v Major,* 407 Mich 394, 400; 285 NW2d 660 (1979). This threshold requirement is met in the present case where defendant's identity was an issue and the similarity of the two robberies tended to establish that defendant committed both of them. In *Major* the Court stated at 398:

"The evidential process by which similar acts evidence is properly introduced involves direct proof of three propositions from which a fourth is inferable and thus proved circumstantially. They are:

"1) that the manner in which the criminal act in question or some significant aspect of it was performed bore certain distinguishing, peculiar or special characteristics;

"2) that certain specific similar acts, performed contemporaneously with or prior to or subsequently to the

act in question, bore the same distinguishing, peculiar or special characteristics;

"3) that the similar acts were performed by the defendant; and

"4) that, accordingly, the crime in question was committed by the defendant." (Footnote omitted.)

At the trial in the instant case, it was established that both robberies were committed by two men wearing ski masks. In each case, one robber was markedly shorter than the other. The shorter man brandished a rifle in both robberies, did all the talking, and in each case ordered the store clerk to remove the entire cash drawer from the register. We believe this evidence satisfied the first two elements of the *Major* test. Neither of the two witnesses to the April 9 robbery could identify defendant as one of the robbers. *Major* requires proof that the similar act was committed by the defendant. However, such proof was supplied by the testimony of defendant's girlfriend, Ms. Whiting, who stated that he told her that he had committed both robberies. While the trial judge's ruling to admit the similar acts testimony may have been premature because Ms. Whiting's testimony did not come into evidence until later, we find that no reversible error occurred.

An issue that was argued below, but not raised by defendant's appellate counsel, is whether his confession resulted from an illegal search and seizure and should have been excluded as "fruits of the poisonous tree". See, *People v Roderick Walker,* 27 Mich App 609; 183 NW2d 871 (1970). The evidence indicated that defendant initially refused to make a statement and requested an attorney when questioned in a police car outside of the townhouse. When Hartranft and the two police officers emerged with the seized evidence, defen-

dant changed his mind and, after waiving his *Miranda*[1] rights, admitted his participation in the two armed robberies. He repeated the confession in a written statement later that day, again preceded by a waiver of his *Miranda* rights.

We will not decide whether the statements should have been excluded. If we assume that the statements were inadmissible along with the evidence seized in the townhouse, there was other evidence adduced at trial which supported defendant's conviction. Kenneth James Darnall, the party store clerk, identified defendant as one of the robbers. On cross-examination, he acknowledged that the robbers, wore stockings over their faces, but claimed he could identify defendant because the stocking over defendant's face was clear. The trial judge indicated that Darnell's testimony alone was sufficient to support the conviction. However, we should note that a portion of this witness's testimony concerned one of the rifles seized from the townhouse attic. The testimony of defendant's girlfriend, Ms. Whiting, also supported the conviction. She stated that defendant told her that he had robbed the Party Pointe store and taken about $300.

In the context of this case, we find that the trial court's failure to exclude the evidence seized from the townhouse, coupled with any error which may have occurred regarding the admissibility of defendant's confessions, was harmless error under the standard of *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

Affirmed.

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR 3d 974 (1966).